*721 Opinion
KINGSLEY, Acting P. J.
Defendant appeals from the judgment for the plaintiff. The judgment is reversed.
On December 21, 1973, the plaintiff, Nancy Ann Fielder, age 79, was shopping in a heavily traveled commercial district of the City of Glendale. As she was proceeding southbound on the west side of Brand Boulevard near the intersection of Wilson Avenue, she tripped on the raised edge of a segment of the sidewalk. The plaintiff suffered a fractured femur as a result of her fall. Plaintiff'testified that she had been shopping in this same area several times in the past.
Jack Cotter, plaintiff’s witness, testified that approximately two months after the date of the injury, the depression in the sidewalk, at the scene of the accident, measured about three-fourths of an inch at its deepest point. This point was located about seven or eight feet from the side of the adjacent building. Mr. Cotter further testified that the sidewalk depression tapered from its three-fourths inch maximum depth to a negligible height at the base of the wall of the adjacent building. However, when the witness was shown a photograph of the sidewalk which had been taken with a measuring tape inserted into the deepest part of the depression, he testified that the height of the depression appeared to be nearer to half an inch. On redirect examination, Mr. Cotter stated that he had been present when the photograph had been taken and, at that time, it had been his opinion that the depression had measured three-fourths of an inch.
The evidence also indicated that the sidewalk was approximately 15 feet wide and that the plaintiff had been walking along about four or five feet from the side of the adjacent building.
It therefore appears that the plaintiff did not trip at the point where the depression was its greatest.
Plaintiff’s grandson, Mr. Larry Moore, testified that he had gone to see the sidewalk shortly after the accident and that the highest point of elevation of the adjoining slabs was approximately one inch. Mr. Moore also testified that within the five feet adjacent to the building the depression ranged between one-fourth and three-fourths of an inch. Mr. Charles Turn bow, an expert witness in the field of safety engineering. *722 testified that, .. the apparent change in elevation between the two abutting sections of the sidewalk was sufficient [j/c] high to constitute a hazard to a pedestrian attempting to negotiate the area.” He further stated that elevations greater than one-half of an inch would present a definite hazard to a pedestrian and that an elevation of three-fourths of an inch would represent a very significant hazard.
Appellant alleges that the trial court improperly allowed the jury to find, as a matter of fact, that the “defect” in the sidewalk could be found to constitute a dangerous condition. Instead, appellant contends that the “defect” was minor and trivial and should have been found, as a matter of law, not to have constituted a dangerous condition. We agree with appellant’s contention.
Therefore, we need not reach appellant’s second contention—even if the “defect” is assumed to be dangerous, the city did not have actual or constructive knowledge of the dangerous condition of the sidewalk so as to render it liable.
Defendant’s purported liability was predicated upon sections 835,[1] 830[2] and 830.2[3] of the California Government Code. These sections and their earlier counterparts have led to the currently “conflicting” authority in California on the topic of when a “defect” in a public sidewalk constitutes a dangerous condition as a matter of law.
On the same basic set of facts different courts have reached diametrically opposite conclusions. Furthermore, many of these courts have *723 failed ;to offer anything but the barest of explanation of the reasons behind their decisions.
In support of its allegation that the depression in the sidewalk was not dangerous as a matter of law the appellant cites the case of Whiting v. City of National City (1937) 9 Cal.2d 163 [69 P.2d 990]. In that case the plaintiff sued the city to recover damages for injuries occasioned by a fall when she caught the toe of her shoe in the upraised edge of a cement square of the sidewalk. The record indicated that the highest point of the rise was about three-fourths of an inch and that it extended for several feet across the width of the walk. On these facts the court stated (at p. 165) that “It is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition. Minor defects are bound to exist. A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise the city could be held liable upon á showing of a trivial defect.” (See also Graves v. Roman (1952) 113 Cal.App.2d 584, 585-586 [248 P.2d 508].)
Furthermore the court stated (at p. 165) that, “In the present case the gradual rise from nothing to three-quarters of an inch in the pavement had existed for many years in the same condition and in a much traveled portion of the business section of the city. Many people walked daily over the sidewalk at that point. The defect was plainly visible. Its existence was common knowledge in the community. The plaintiff herself knew of it. She tripped over it in the daytime while she was walking toward the exposed side of the rise, without anything to obstruct her vision of the sidewalk area. She had good eyesight, was an excellent walker and frequently walked several miles in a day.”
Thus, the court stated (at p. 166) that, as a matter of law, “.. . the defect in the sidewalk in question was a minor defect; that no injury would ordinarily be suffered therefrom when ordinary care was exercised in using the sidewalk. Many thousands of people, including numerous city officials, had passed over this defect during the five years of its existence and no one had heretofore suffered from it to the extent of seeking redress against the city. The city is not an insurer of its public ways and is not bound to keep them so as to preclude the possibility of injury or accident therefrom.”
*724 The facts in Whiting, supra, 9 Cal.2d 163, appear to be nearly identical with those in our case. In each case the “defect” consisted of the horizontal nonalignment of two slabs of the sidewalk and in each case the depression measured about three-fourths of an inch. It should be noted that the court in Whiting was able to find, as a matter of law, that the “defect” in the sidewalk was not a “dangerous condition,” even though four other people had stumbled on the same spot during the five years preceding the plaintiff’s accident.
Appellant further presents the case of Barrett v. City of Claremont (1953) 41 Cal.2d 70 [256 P.2d 977], where the court was able to conclude that, as a matter of law, a ridge of one-half of an inch above the surface of the sidewalk was minor and trivial and that no injury would be sustained by one exercising reasonable care in the use of the sidewalk.
The court stated (at p. 73) that, “Growing out of the difficulty of maintaining heavily traveled surfaces in perfect condition is the practical recognition that minor defects inevitably occur, both in construction and maintenance, and that their continued existence is not unreasonable. In such casé, irrespective of the question of notice of the condition, no liability may result. (Graves v. Roman (1952) 113 Cal.App.2d 584, 586-587 [248 P.2d 508]; Robson v. Union Pac. R. R. Co. (1945) 70 Cal.App.2d 759, 761-762 [161 P.2d 821]; Clarke v. Foster’s Inc. (1942) 51 Cal.App.2d 411, 414 [125 P.2d 60]; Sischo v. City of Los Banos (1940) 37 Cal.App.2d 717, 718 [100 P.2d 305].)”
Moreover, the court stated that many past decisions[4] had held that defects of a greater magnitude were minor and trivial as a matter of law.
The court in Barrett, supra, 41 Cal.App.2d 70, then proceeded to distinguish every case[5] upon which the respondent had relied for his *725 contention that the issue of dangerousness was properly a question of fact for the jury. The court found that in these decisions either the outright nature of the defect was not trivial or minor or that the courts, in these cases, were never faced with the question of whether the defect was dangerous as a matter of law. Furthermore, in none of these cases was the “defect” of the same nature as that which was involved in Barrett, supra, 41 Cal.App.2d 70, or in our present case. None of these cases involved the “simple” situation where two adjoining slabs of a sidewalk were unaligned horizontally by a difference of only about three-fourths of an inch.
The appellant also cited the case of Ness v. City of San Diego (1956) 144 Cal.App.2d 668 [301 P.2d 410] where there was a seven-eighths of an inch variation between two slabs of the sidewalk where plaintiff tripped. There the court said (at p. 673) that, “On the authority of the Whiting, [supra,] and Balmer [22 Cal.App.2d 529 (1937)] cases we hold that an even break between two adjoining slabs of a concrete walk of seven-eighths of an inch elevation ... is but a trivial defect and without danger to pedestrians walking there abouts with due care. . . , The conclusion is inescapable that the evidence cannot, as a matter of law, be held sufficient to justify a verdict for plaintiff.” (Italics added.)
Thus, the cases of Whiting,[6] Barrett,[7] and Ness[8] directly support the appellant’s contention that where a sidewalk slab is raised in elevation by only about three-fourths of an inch, such a “defect” is not dangerous as a matter of law. This is because it is impossible for a city to maintain its *726 sidewalks in perfect condition. Minor defects nearly always have to exist. The city is not an insurer of the public ways against all defects. If a defect will generally cause no harm when one uses the sidewalk with ordinary care, then the city is not to be held liable if, in fact, injury does arise from the defect.
The defect of a slightly depressed sidewalk only has been held to be not dangerous, as a matter of law, in those cases where no aggravating circumstances or facts were present. Thus, as noted in Barrett, 41 Cal.2d 70 (1953), where the defect goes beyond a mere depression between two adjoining slabs and consists of potholes, jagged breaks and cracks or also contains the presence of foreign substances such as grease and oil, then it can not be said that the defect is trivial and minor as a matter of law.
It is to be noted that when the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law.
In our present case there was no evidence of any aggravating circumstances or factors which might have increased the dangerousness of the defect, except that mention was made of another similar defect 125 feet away. However, a second defect that remote in distance could not reasonably be argued to have increased the danger of the primary defect. Thus, it appears that substantial authority exists to find that the three-fourths-inch depression on which the plaintiff tripped was not dangerous as a matter of law.
We cannot leave the matter to rest here, however, because a second line of cases exist, several of which are cited by the respondent, which hold that the issue of whether a given defect is or is not dangerous usually is not a question of law, but is generally one of fact. To complicate matters, these cases also refer back to the decisions cited by the appellant and confirm that there are times when defects may be found to be not dangerous as a matter of law. These cases generally fail to mention when such times may exist and only state- that when reasonable minds may differ as to whether a given defect is dangerous the issue should be decided by the triers of fact and not by the court as a matter of law.
After reviewing these cases, we conclude that they can be reconciled with the cases cited by the appellant. Therefore, they do not preclude us *727 from finding that the defect in this case could be found trivial as a matter of law.
In the case of Balkwill v. City of Stockton (1942) 50 Cal.App.2d 661 [123 P.2d 596] the plaintiff caught her heel in a hole in the sidewalk and fell. The record indicated that the hole measured about four and five-eighths inches long, two inches wide and one-half inch deep. However, there was also some evidence that the hole might have been, in fact, up to three inches deep. The court further stated, that the defect proved to be actually dangerous because the plaintiff had tripped on it and several other persons had previously fallen on the same spot. Thus, the court was unwilling to say, as a matter of law, that the defect was not dangerous. The court stated (at p. 667) that, “In spite of the fact that defects in sidewalks may be so slight or trivial as to create mere questions of law regarding their dangerous nature, it is, nevertheless, true that when the evidence is so conflicting that different conclusions may reasonably be drawn regarding the dangerous character of the defects, or concerning the question of notice thereof on the part of the officers of the city, the determination of such questions should be left to the jury and their conclusions should not then be disturbed on appeal.”
It appears that the court in Balkwill refused to find, as a matter of law, that the defect was trivial, because reasonable minds could differ on the question of whether a hole of those dimensions in a sidewalk was dangerous. The defect there did not consist of a mere depression between two adjoining slabs of the sidewalk as in Whiting, supra (1937) 9 Cal.2d 163, but, instead, the defect consisted of a hole of rather significant size. Thus, it appears that the court in Balkwill actually found in accord with Barrett, supra (1953) 41 Cal.2d 70, wherein the court properly distinguished those cases where the dangerousness of the defect was found to present a factual question because the intrinsic nature of the defect was not trivial.[9]
Furthermore, it should be noted that the court in Balkwill also found that several other persons had been injured on the same defective spot. Thus, as will be discussed infra, the court had evidence upon which it could be said that reasonable minds might differ as to whether the defect was dangerous.
*728 In this case the intrinsic qualities of the defect are not comparable to those in Balkwill. Instead, we find that the nature of the defect in this case more closely resembles the “defect” in Whiting. Thus, since Balkwill approvingly cited Whiting, we find this to be authority that the defect in our present case was not dangerous due to its intrinsic nature. There are also no contentions that the “defect” is otherwise dangerous due to any accompanying circumstances. Furthermore, there was no evidence presented that any other persons had been injured on the same spot. Thus, based upon the nature of the defect in this case, Balkwill does not require us to find that the issue of dangerousness is only to be found as a matter of fact.
In Fackrell v. City of San Diego (1945) 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773] the court stated (at p. 206) that, “As to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts. [Citations.] Whether a given set of circumstances creates a dangerous or defective condition is primarily a question of fact. [Citations.]”
In that case the sidewalk used by plaintiff gave way and she fell into a hole that was about five inches in diameter, full of mud and did not appear to be deep. However, the hole actually expanded to about two feet in depth once the plaintiff fell in. This case was clearly distinguishable from . Whiting and from our present case. In Fackrell there was a hidden mud trap almost two feet deep. Surely, it need not be said that this type of defect was of the same intrinsic nature as that of a simple sidewalk depression.
The case of Owen v. City of Los Angeles (1947) 82 Cal.App.2d 933, 938 [187 P.2d 860], states that, “[t]he question, on appeal, whether a condition is defective or dangerous is one which calls for the application of the rule that where there is room for difference of opinion among reasonable minds, the question is one of fact.” Once again, the factual situation in that case was similar to those in Balkwill[10] and Fackrell,[11] in that the nature of the defect clearly could not be said to be trivial as a matter of law. There the plaintiff fell into a hole that measured approximately four to six inches wide, nine to eleven inches long and two to three and one-half inches deep.
*729 Thus, it appears that, in those decisions where it has been held that the dangerousness of the defect should generally be found only as a matter of fact, the intrinsic qualities of the then existing defect clearly were not trivial. The defects in those cases were of such dimension and quality that the courts were correct in not finding triviality as a matter of law, because reasonable minds could differ on the question of whether they were dangerous. In Balkwill there was a hole of possibly three inches deep, in Fackrell there was a hole almost two feet deep and in Owen there was a hole between two and three and one-half inches deep. It should be noted, however, that although on the facts of those cases the courts were unwilling to find that the defect was not dangerous, as a matter of law, they were willing to say that under certain circumstances a defect might be found to be trivial as a matter of law. In support of this position those cases generally cited with approval the case of Whiting, where the defect in question was nearly identical with that in our present case. In Whiting, as in our own case, the defect concerned the mere horizontal nonalignment of two slabs of a sidewalk. The cases of Balkwill, Fackrell, and Owen do not contradict the Whiting line of cases, because those later cases did not concern a defect of the same intrinsic nature as was involved in Whiting. Thus, we conclude that the Balkwill line of cases, by citing Whiting, lend authority to the proposition that when two slabs of a sidewalk are nonaligned horizontally, by a slight depression, such a defect may be found to be trivial as a matter of law provided that there are no aggravating circumstances attending the defect.
To support her position respondent cites us to the case of Johnson v. City of Palo Alto (1962) 199 Cal.App.2d 148 [18 Cal.Rptr. 484]. There the plaintiff fell on the sidewalk when the differential between the two slabs was only about one-half to five-eighths of an inch. Thus, the ridge was smaller than that in Whiting and Ness, where the defect was found trivial as a matter of law. The court in Johnson stated (at p. 151) that, “. . . the public is entitled to be protected from even small defects if injury is likely to result from them . . . and ‘[t]he fact that a person has been proximately injured as a result of the defect is some indication that the condition is dangerous or defective. . . .’ ” The court then attempted to distinguish its facts from those in Whiting by stating (at p. 152) that, “In determining whether or not the condition is dangerous or defective, or merely trivial, all of the circumstances surrounding the condition must be considered in the light of the facts of the particular case.” Furthermore, “.. . if reasonable minds could differ as to whether the condition was dangerous or defective, then such defect could not be considered *730 trivial as a matter of law.” Thus, the court found that dangerousness could not be determined as a matter of law because, .. there were other factors, namely, this was respondent’s first sojourn down Lincoln Avenue in this particular direction; the accident occurred at night and the sidewalk was shadowy because of overhead trees; further, the evidence reveals that respondent was walking slowly and apparently did not contribute to the accident in any way.”
It thus appears that the court in Johnson tried to distinguish its case from the Whiting string of cases, on the basis that there were aggravating factors which accompanied the defect, making the issue of dangerousness one to be resolved by the jury. Thus, the court stated that even when a “defect” only consisted of the mere nonalignment of two slabs of a sidewalk by a minimal amount, there was still the possibility that the defect might not be able to be found to be trivial, as a matter of law, because of the interplay of aggravating circumstances.
However, as we noted earlier, the respondent has failed to bring any such aggravating circumstances to our attention and we have failed to locate any in the record.
In the case of Gentekos v. City & County of San Francisco (1958) 163 Cal.App.2d 691 [329 P.2d 943] plaintiff also fell on a sidewalk. There, the court stated (at p. 696) that, “A condition is a dangerous or defective one if the hazard is one from which injury may reasonably be anticipated to those properly using the area for the purpose intended. [Citations.] Whether a particular condition is a dangerous or defective one is generally a question of fact. [Citations.] Of course the condition must be one that is truly dangerous or defective. If it is trivial then it is neither dangerous nor defective, and, as a matter of law, the city is not liable.”
In that case it appears that the defect could not be said to be trivial as a matter of law. There was a break in the sidewalk 13 inches long parallel to the curb and 10½ inches long to the east, and 4½ inches long to the west. “The edges of the break were irregular and jagged, and some parts of the broken piece were missing. There was a hollowed out space below a part of the broken portion so that in this area the broken piece projected about two inches above the bottom of the depression.” (P. 695.) Furthermore, there .was evidence that other people had previously stumbled there.
*731 The court thus found that, since reasonable minds could differ as to whether the condition was dangerous, it could not be said, as a matter of law, that the defect was trivial. Instead, a question of fact was presented.
The court in Gentekos went on to say (at p. 698) that, “It is obvious that a tape measure cannot be used to determine . . . [whether the defect was trivial as a matter of law]. The question is not solely one of height or depth. The nature of the defect, that is, whether it is a constructional one, one caused by natural causes such as normal wear or tear, the elements, or tree roots, etc., or whether it is an artificial break in the sidewalk, and how long it has existed are all important. The condition of the sidewalk surrounding the defect is important, as is its location on the sidewalk.”
Furthermore, the court noted (at p. 699) that, “No useful purpose would be served by analyzing the facts of those cases holding that a particular defect is so minor as to relieve the city of liability as a matter of law and those holding that the question of liability is one of fact. No doubt, some of the cases are apparently inconsistent with some of the others. This conflict has arisen because some of the cases seem to have applied a tape measure to the defect to determine whether or not the question of liability is one of fact or of law. But no California court has expressly adopted the tape measure test. Obviously, such a rigid test is unsound. The size of the defect is a factor, an important factor, that must be considered, but it is not the only factor. The cases all declare that all of the conditions surrounding the defect must be considered in the light of the facts of the particular case, before the issue can be determined. All of the cases purport to adopt the same rule—if reasonable minds can differ on the question it is one of fact, and that it is only when reasonable minds must come to the conclusion that the defect is so trivial that a reasonable inspection would not have disclosed it, that the question becomes one of law. Each case must be determined on its own facts.”
It appears from Gentekos that we must view the “defect” in light of all the circumstances surrounding it. This point also was made clear from the cases of Balkwill, Fackrell and Owen where the intrinsic nature of the various defects played a crucial part in the courts’ decision that triviality could not be found as a matter of law.
Thus, our decision of whether the defect is not dangerous, as a matter of law, should not turn solely upon the size of the depression, or the fact that the defect only consisted of the horizontal nonalignment of two slabs of the sidewalk. Instead, our decision should also be based *732 upon whether there were any additional factors present which could have made the defect more dangerous than it would appear in the abstract due to its mere depth.
In reviewing the facts of this case there would appear to be no such aggravating circumstances as were present or made mention of in Gentekos, supra (1958) 163 Cal.App.2d 691. The defect did not contain any broken pieces, jagged edges, hollowed out parts or other factors which would have allowed reasonable minds to determine that the “defect” was dangerous. Also, there was no evidence that the defect was caused by artificial means. Furthermore, there were no such additional factors present, as were noted in Johnson, supra (1962) 199 Cal.App.2d 148, such as whether the accident had occurred at night in an unlighted area.
The only evidence presented as to the dangerousness of the defect was the evidence of the depth of the depression.
There was some expert testimony that the defect was dangerous, due to its depth, but this should not prevent us from finding in an appropriate situation that the defect was trivial as a matter of law. For in this area there is no need for expert opinion. It is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous.
In analysis, it appears that the nature of the defect in this case was one that properly could be said, as a matter of law, to have been not dangerous. The defect in this case was not at all intrinsically comparable to the size or nature of the defects found in cases such as Fackrell. Instead the defect was directly comparable to that which was found in a case such as Whiting which has been approvingly cited in nearly all subsequent cases on the topic. Furthermore, unlike the cases of Johnson[12] and Gentekos,[13] there are no circumstances surrounding the defect in this case which might have rendered it dangerous, such that a jury would have to evaluate the facts.
T.he last case with which we must deal is that of Rodriguez v. City of Los Angeles (1963) 215 Cal.App.2d 463 [30 Cal.Rptr. 180]. In that case the plaintiff was injured as a result of tripping and falling on a defective *733 sidewalk where the abutting sections of two slabs of the sidewalk were not in horizontal alignment. One section ranged from one-half an inch to approximately one inch higher than the other. The court held that the defect was not a minor one as a matter of law. The court stated (at p. 466) that, “[t]he duty imposed on the city to keep its sidewalks in repair is not that of an insurer. The duty is to maintain them in a reasonably safe condition.” However, the court goes on to state (at p. 472) that, “. . . while the city is not liable for minor defects that could not reasonably be anticipated to result in accidents, .the public is nevertheless entitled to be protected from even small defects if injury is likely to result from them.” The court then went on to say, that in this case, it was a question of fact for the jury whether the “defect” was dangerous because reasonable minds could differ.
It appears that the only evidence presented upon which reasonable minds might differ was the fact that four other persons had tripped on this same spot. This evidence was sufficient to justify the court in not finding that the defect was trivial as a matter of law.
We note that in Whiting the court found that the “defect” was not dangerous as a matter of law, even though there was evidence that several other persons had previously tripped on the same spot. In this respect we disagree with the finding made by that court. Instead we believe that, in accord with Gentekos, Balkwill and especially Johnson this fact is properly one of those factors which the court should consider when deciding whether it should rule on the question of dangerousness or whether the issue should go to the jury. This should hot be taken to mean, however, that a defect may not be found to be trivial merely because other persons have tripped on the same spot. We note that, according to Government Code section 830[14] it is relevant to a finding of dangerousness that other persons have tripped on the same spot. This section states that a condition of property is dangerous when it gives rise to there being a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used. Thus, the evidence that other accidents have occurred on the same spot goes toward proof that there is a substantial risk that injury will occur by persons using the sidewalk with due care.
In the present case the only facts alleged concerning whether the “defect” was dangerous was the evidence presented as to the depth of the *734 depression. No evidence was presented as to any other surrounding circumstances or to the fact that any other persons had been injured on the same spot. Thus, on the authority of Whiting,[15] Barrett,[16] Ness[17] and even the cases cited by the respondent, we find that, as a matter of law, the defect was not dangerous.
We hold that, in the first instance, it is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects, We further hold that, when a court determines whether a given defect is trivial, as a matter of law, the court should not rely merely upon the size of the depression. While size may be one of the most relevant factors to the decision, it is not always the sole criterion. Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate. As such, the court should view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole. The court should also look at other factors such as whether the accident occurred at night in an unlighted area. Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect.
In conclusion, when a court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous, the court may not rule that the defect is not dangerous as a matter of law. However, when the only evidence available on the issue of dangerousness does not lead to the conclusion that reasonable minds may differ, then it is proper for the court to find that the defect was trivial as a matter of law.
The judgment of the trial court is reversed.
Dunn, J., concurred.

“[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶ (a) ... or [¶ (b) the public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.”

“(a) ‘Dangerous condition’ means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

“A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.”

(Whiting v. City of National City, supra, [adjoining sidewalk panels differing in elevation three-fourths inch at the highest point]; Nicholson v. City of Los Angeles (1936) 5 C.2d 361 [54 P.2d 725] [one and one-half inches difference in elevation]; Sischo v. City of Los Banos, supra [grade in sidewalk of fifty-eight hundredths inch perfoot]; Balmer v. City of Beverly Hills (1937) 22 Cal.App.2d 529 [71 P.2d 854] [one inch difference in elevation of sidewalk panels]; Dunn v. Wagner (1937) 22 Cal.App.2d 51, 54 [70 P.2d 498] [one inch rise in sidewalk]; Meyer v. City of San Rafael (1937) 22 Cal.App.2d 46, 50 [70 P.2d 533] [adjoining sidewalk panels varying from five-eights inch to one-thirty-eighth inches in height].)

(Fackrell v. City of San Diego (1945) 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 773] [pothole in sidewalk from 5 inches to 2 feet deep]; Anderson v. County of San Joaquin (1952) 110 Cal.App.2d 703 [244 P.2d 75] [chuckhole 2 to 6 inches deep]; Murphy v. County of Lake (1951) 106 Cal.App.2d 61 [234 P.2d 712] [question of whether or not *725 defect was a minor one not raised]; Warren v. City of Los Angeles (1949) 91 Cal.App.2d 678 [205 P.2d 719] [hole 2 inches deep, 10 inches square, containing oil and grease]: Owen v. City of Los Angeles (1947) 82 Cal.App.2d 933 [187 P.2d 860] [hole 9-11 inches long, 4-6 inches wide, and 2-31 '2 inches deep]; Louie v. Hagstrom’s Food Stores (1947) 81 Cal.App.2d 601 [184 P.2d 708] [puddle of syrup on floor, 6 to 8 inches wide]; Maddern v. City & County of S. F. (1946) 74 Cal.App.2d 742 [169 P.2d 425] [depression in street 65 to 80 feet long. 10 to 12 feet wide, and 8 to 10 feet deep]; Sheldon v. City of Los Angeles (1942) 55 Cal.App.2d 690 [131 P.2d 874] [depression in sidewalk l17: inches deep]: Balkwill v. City of Stockton (1942) 50 Cal.App.2d 661 [123 P.2d 596] [hole in sidewalk 5 inches long. 2 inches wide, and 2 inches deep]; Allen v. City of Los Angeles (1941) 43 Cal.App.2d 65 [110 P.2d 75] [bridge raised 2 inches above sidewalk]; Ackers v. City of Los Angeles (1940) 40 Cal.App.2d 50 [104 P.2d 399] [hole in sidewalk 12 inches long, 3 inches wide, and 2 inches deep]; Hook v. City of Sacramento (1931) 118 Cal.App. 547 [5 P.2d 643] [hole 2 feet long, 18 inches wide, and l1/’ inches deep].) Barrett v. City of Sacramento (1933) 128 Cal.App. 708 [18 P.2d 356], decided prior to the Nicholson and Whiting cases, is not in harmony with those decisions and is disapproved.

 9 Cal.2d 163 [69 P.2d 990] (1937).

 4l Cal.2d 70 [256 P.2d 977] (1953).

 144 Cal.App.2d 668 [301 P.2d 410] (1956).

See footnote 5.

 50 Cal.App.2d 661 [ 123 P.2d 596] (1942).

 26 Cal.2d 196 [157 P.2d 625, 158. A.L.R. 773] (1945).

 199 Cal.App.2d 148 [18 Cal.Rptr. 484] (1962).

 163 Cal.App.2d 691 [329 P.2d 943] (1958).

See footnote 2.

 9 Cal.2d 163 [69 P.2d 990] (1937).

 41 Cal.2d 70 [256 P.2d 977] (1953).

 144 Cal.App.2d 668 [301 P.2d 410] (1956).